## STATE OF CONNECTICUT *v.* LARRY SHEETS
## (13170)

Landau, Schaller and Hennessy, Js.

Argued October 27, 1995—decision released February 13, 1996

*Beth Merkin,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Michael A. Pepper,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Larry Sheets, appeals from the judgment of conviction, rendered after a jury trial, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). The defendant claims that the trial court improperly (1) precluded him from fully questioning prospective jurors, (2) allowed the state to use extrinsic evidence and misconduct evidence in its rebuttal presentation and (3) precluded him from rehabilitating his alibi witness. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On December 23, 1992, the defendant entered a convenience store on Whalley Avenue in New Haven, indicated that he had a gun in his waistband and demanded that the two employees, Abu Ibrahaim and another clerk, give him the cash in the store's register. The defendant then took the cash and some lottery tickets and ran from the store. On December 29, 1992, less than one week after the first robbery, the defendant went back to the store and confronted Ibrahaim again. The defendant, grasping the handle of a gun in his waistband, demanded cash from the register. Taking the cash, he ran from the store. The police arrested the defendant on the basis of information received from a confidential informant, and Ibrahaim identified the defendant as the perpetrator of the robberies after seeing his picture in a photographic array.

I

The defendant first claims that the court precluded him from fully questioning prospective jurors. He claims that the court precluded him from asking prospective jurors whether they could separate the robberies if they knew that the same clerk was working at the store during both robberies. He asserts that if the jurors learned for the first time at trial that the same clerk was on duty during both robberies and would be the

identification witness as to each robbery, they would have difficulty keeping the two robbery counts separate and distinct during their consideration of the evidence.

The following question exemplifies the questions at issue: "If you hear that the same man was robbed twice, and in his mind it was by the same person, would you be able to keep those two incidents separate?" The court sustained the state's objection to this question, ruling that the defendant was "precluded from asking these jurors whether or not, if the same victim is robbed within a six day period, whether or not that would have an effect on their ability to keep the charge separate." The court further stated: "In this particular case I think it is inappropriate, and your questions, as you frame them, indicate that they would have difficulty. I assure you that I will charge the jury appropriately, and I think that the simple question is whether or not they could keep both incidents separate as they would be charged to do." The trial court even advised defense counsel on how to ask the question in a proper manner. The court told counsel that if she asked questions probing the ability of the prospective juror to keep the two incidents separate without mentioning the fact that the same person was robbed in both incidents, the question would be acceptable.

The state argues that evidence of the two robberies was admissible as to each charge in a joint trial because together the evidence proved identity and a common scheme. The admissibility of the evidence, therefore, creates a factual issue concerning whether each robbery was corroborative of the defendant's guilt in the other robbery. For the defendant to present to a prospective juror the fact that the same clerk was robbed twice and then to ask whether he or she could keep the charges separate constituted an improper attempt to obtain in advance the prospective juror's view on the significance of a particular fact.

"The right to question each juror individually by counsel shall be inviolate." Conn. Const., art. I, § 19, as amended by art. four of the amendments. General Statutes § 54-82f further provides: "In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. . . ." "The extent to which parties should be allowed to go in examining jurors as to their qualifications is a matter largely resting in the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused, and where harmful prejudice appears to have been caused thereby." *Sherman* v. *William M. Ryan & Sons, Inc.*, 126 Conn. 574, 578, 13 A.2d 134 (1940).

Our Supreme Court has distinguished a question as to the qualifications of the jurors from a hypothetical question. Id. "[H]ypothetical questions intended to elicit from a juryman in advance what his decision will be under a certain state of the evidence or upon a certain state of facts should not be permitted by the trial court. A party has no right to assume the facts of a case about to go on trial, and ascertain the juror's opinion in advance." Id.

In this case, the questions would have allowed into the voir dire the fact that the same person was the victim of both robberies, suggesting that it may be difficult to keep the two incidents separate. The trial judge sustained the objections of the assistant state's attorney to the defense counsel's questions. Because defense counsel had no right to ask jurors their opinions on an assumed set of facts, we conclude that the trial court properly exercised its discretion in prohibiting the question. See id., 579.

## II

The defendant's second claim is that the trial court improperly allowed the state to cross-examine the defendant's alibi witness, Monica Robinson, regarding a domestic incident that was not relevant to the robbery charges. The defendant contends that the state questioned Robinson in an attempt to show prior misconduct by the defendant. The state argues that although the prior statements of Robinson concerned the defendant's misconduct, they were not admitted to prove that the defendant engaged in the misconduct, but to establish the status of the relationship between Robinson and the defendant. Robinson, the defendant's girlfriend, testified that on December 23 and 29, 1992, she and the defendant were in bed together due to illness. The state further argues that the court admitted only the witness' inconsistent statements concerning the incident, and that these statements were relevant to the credibility of her alibi testimony.

In its cross-examination of Robinson, the state asked a series of questions that suggested that shortly before the robberies, Robinson made a complaint to the police concerning an altercation at her residence involving the defendant. She had told the investigating officer that the defendant was her ex-boyfriend and that she saw him smash her car windshield with a stick. The questions further suggested that the defendant had asked Robinson for $10 and that she had refused to give it to him because she believed that the money would be used for drugs. At trial, Robinson denied that she had made a complaint against the defendant, that she had referred to him as her ex-boyfriend, that she had seen him breaking the windshield or that he had asked her for $10 that she had believed he would use to buy drugs.

The state introduced rebuttal testimony to prove that shortly before the robberies, a police officer answered

a criminal complaint made by Robinson against the defendant. The investigating officer testified that Robinson had referred to the defendant as her former boyfriend. Because Robinson testified on direct examination that the defendant was her boyfriend at the time the robberies took place, during cross-examination, the state explored their relationship and the criminal complaint regarding the altercation and the smashing of the windshield. The purpose of this inquiry was to allow the jury to gauge the credibility of Robinson's testimony.

As a general rule, evidence of a criminal defendant's prior crimes or misconduct is not admissible. *State* v. *Crumpton*, 202 Conn. 224, 228, 520 A.2d 226 (1987). Evidence of prior uncharged misconduct may be used, however, to impeach the credibility of a defense witness. *State* v. *Cooper*, 227 Conn. 417, 430–31, 630 A.2d 1043 (1993). " 'The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court.' " *State* v. *Brown*, 199 Conn. 47, 56, 505 A.2d 1225 (1986).

In this case, the evidence of the relationship between the defendant and Robinson was material and relevant to establish whether Robinson's alibi testimony was credible. Because Robinson was an alibi witness for the defendant, the state had a right to attack her credibility. In the course of cross-examination, the state had a right to adduce the defendant's prior uncharged misconduct as long as it was relevant and its probative value outweighed its prejudicial impact. *State* v. *Williamson*, 206 Conn. 685, 698, 539 A.2d 561 (1988).

The question that we now address is whether the questions involving prior uncharged misconduct were more prejudicial than probative. The evidence was highly probative because it focused on the defendant's alibi defense, which was necessarily a central part of

the case. Robinson was the sole witness who testified that the defendant was at her apartment during the commission of the robberies. The testimony was that the defendant was Robinson's boyfriend and both were ill and confined to bed together during both robberies. The state inquired as to the status of the relationship between Robinson and the defendant and whether at the time of the robberies the status of the relationship was consistent with Robinson's alibi testimony. These questions and the rebuttal testimony of the officer tended to weaken Robinson's credibility. The trial court diminished the prejudicial effect of the evidence by giving the following limiting instruction: "Now, you heard some evidence in the case regarding an incident where the defendant, Monica Robinson and her mother were involved, and a New Haven police officer was called there. It was not offered to prove that the incident, in fact, occurred . . . . The evidence was only admitted in trial to test the credibility of Monica Robinson."

Considering the purpose of the challenged evidence and the trial court's limiting instruction, we cannot conclude that as a matter of law the court abused its discretion in finding that the probative value of the evidence outweighed its prejudicial effect and in admitting prior uncharged misconduct by the defendant. See *State* v. *Brown*, supra, 199 Conn. 58.

### III

The defendant's final claim is that the trial court improperly precluded him from rehabilitating his alibi witness by excluding the entry into evidence of his notice of alibi and the related testimony of the clerk of court. In cross-examining Robinson, the state asked her to explain why she did not contact the police or the state's attorney to tell them that the defendant was with her at the time the robberies occurred. She replied that

it was not her responsibility to do so. Robinson also claimed that she wrote a letter to the clerk of the court stating that the defendant was with her at the times the robberies were committed. The clerk testified that he was the keeper of the file and, after examining it, did not find that it contained a letter from Robinson.

The defendant filed a notice of alibi defense in accordance with the requirements of Practice Book § 763, stating that he would rely on the testimony of Robinson to show that he was with her. The defendant argues that it was the state's responsibility to contact Robinson. The state argues that neither the statutes nor the rules of practice require it to contact an alibi witness.

Outside the presence of the jury, the defendant moved to have the state's demand for notice of alibi defense and the defendant's notice of alibi defense and amended notice of alibi defense introduced into evidence as full exhibits through the testimony of the clerk of court. The state countered by pointing out that there had been discussions between the state and defense counsel concerning Robinson's correct address. Additionally, the state argued that the decision to contact Robinson involved trial tactics and that inquiries into the notice of alibi defense documents, and the actions taken in connection with them, could lead to the state's attorney's and defense counsel's being required to testify. The trial court sustained the state's objection to the defendant's motion to make the notice of alibi defense documents full exhibits and held that they were not relevant to the issues raised at trial. The court further concluded that the notice of alibi documents were filed simply to comply with the rule set out in Practice Book § 763.

"[O]ur standard of review regarding challenges to a trial court's evidentiary rulings is clear. Evidentiary rulings will be overturned on appeal only where there

was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. *State* v. *Indrisano*, 29 Conn. App. 283, 291, 613 A.2d 1375 (1992), quoting *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990)." (Internal quotation marks omitted.) *State* v. *Johnson*, 29 Conn. App. 584, 587–88, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993) (certification improvidently granted). The alibi testimony of Robinson was fully presented to the jury and her reasons for not contacting the police were also given. Robinson also testified that the state had not contacted her. The defendant has not shown that the state's failure to contact Robinson, even with the knowledge that the defendant planned to use her as an alibi witness, was relevant. Under the circumstances of this case, we cannot conclude that the court abused its discretion or that the defendant was substantially prejudiced by the court's ruling.

The judgment is affirmed.

In this opinion the other judges concurred.